**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **RICK R. TUCKER,** | CASE NO. 17-cv-00642-YGR |
| Plaintiff**,** | |
| vs. | **ORDER RE MOTION TO DISMISS** |
| | Re: Dkt. No. 20 |
| **NOVATO UNIFIED SCHOOL DISTRICT, ET AL.,** | |
| Defendants**.** | |

Plaintiff Rick Tucker brings this action against defendants Shalee Cunningham and the Novato Unified School District (the "District"), alleging violations of constitutional rights under section 1983, as well as state tort and labor claims. (Dkt. No. 13, First Amended Complaint ("FAC").) The District moves to dismiss all counts alleged in the FAC arising out of defendant Cunningham's supervisory capacity, false reports to law enforcement and to the California State Teachers' Retirement System ("CalSTRS"), and for retaliation. These claims include unreasonable seizure of person (Counts 2 and 3) and property (Count 5 and 6); retaliation (Count 9 and 10); and malicious prosecution (Count 12 and 13) against the District based final policymaking authority and ratification. (Dkt. No. 20.)[1] Having carefully considered the pleadings and the arguments of the parties, the Court hereby **DENIES** defendants' motion to dismiss as to Counts 2, 5, 9 and 12;

---

[1] Accordingly the motion does not challenge the claims against Cunningham in her individual capacity for unreasonable seizure of person (Count 1) and property (Count 4); retaliation (Count 8); and malicious prosecution (Count 11); and against all defendants for conversion (Court 7) and unlawful denial of wages pursuant to California Labor Code Section 216 (Count 14).

**DENIES IN PART** the motion as to Counts 3, 6, 10 and 13 based on Shalee Cunningham's ratification of Pamela Haessley's alleged conduct; and **GRANTS WITHOUT PREJUDICE** the motion as to Counts 3, 6, 10 and 13 based on the District Board of Education's ratification of Cunningham's alleged conduct.[2]

## I.     FACTUAL BACKGROUND AS ALLEGED

Plaintiff Rick Tucker was the Executive Director of Novato Public Access Television ("NPAT"), a non-profit corporation created and controlled by the District. (FAC ¶¶ 7-8.) On November 21, 2013, he alleges that his employment was terminated at the request of Cunningham, the District's Superintendent at the time. (*Id*. ¶ 7.) Plaintiff alleges that Cunningham was disappointed with him for reporting student vandalism at the NPAT television studio. He believes Cunningham interpreted the vandalism reports as calling into question Cunningham's ability to ensure a secure campus. (*Id*. ¶ 10.) In response, plaintiff alleges Cunningham retaliated by terminating Tucker and making a false police report accusing plaintiff of bringing a firearm to school. (*Id*. ¶¶ 10-11.) She further told police that plaintiff "was a pathological liar and had anger management problems." (*Id*. ¶ 35)

Plaintiff alleges that on December 13, 2013, Cunningham conspired with Pamela Haessly, who replaced plaintiff as NPAT's Executive Director, to "advocate[] for the fabrication of criminal charges to be filed against T[ucker]." (*Id*. ¶¶ 14, 25.) Specifically, plaintiff alleges that Cunningham suggested a number of possible allegations that could be made against plaintiff. (*Id*.) For example, Cunningham allegedly suggested that they could accuse plaintiff of fraud. (*Id*.) Plaintiff alleges that defendants ultimately accused him of stealing approximately $32,000 worth of NPAT equipment, and later changed this to an accusation that plaintiff had improperly received $15,222.28 in expense reimbursements. (*Id*.) Plaintiff further alleges that defendants gave Haessly

---

[2] Plaintiff filed his opposition brief on July 7, 2017. (Dkt. No. 24, Opposition.) Defendants replied on July 17, 2017. (Dkt. No. 25, Reply.) Defendants have submitted documents for judicial notice as has plaintiff. (Dkt. Nos. 21, 24.) In light of the lack of opposition to either, the Court **GRANTS** both requests for judicial notice, but does not accept the truth of any matters asserted in the documents. The Court gives such documents their proper evidentiary weight.

all of the plaintiff's original expense reimbursements from the previous five years, which she then kept for two months, disassembled from their supporting documents, wrote on, lost portions of, and never returned as a complete set. (*Id.* ¶¶ 15-16.) Further, Trucker claims that defendants sent these "intentionally disordered and adulterated original documents to the District Attorney's office." (*Id.* ¶ 18.) On February 12, 2015, Plaintiff was arrested and charged with grand theft and embezzlement by an employee. (*Id.* ¶ 17.) Tucker alleges that he was not aware that defendants intended to file criminal charges against him until the date of his arrest. (*Id.*) Ultimately, charges against plaintiff were dismissed by the Marin County District Attorney on August 10, 2016. (*Id.* ¶ 19.)

Meanwhile, on January 9, 2014, plaintiff alleges that NPAT Board discussed a plan conceived by Cunningham and Haessly to "attack[]" plaintiff's CalSTRS pension "as a catalyst to get R[ick]. T[ucker]. to back off his litigation." (*Id.* at ¶¶ 20, 46.) Plaintiff claims that the "NPTA Minutes also confirm the intent to steal half of Plaintiff's pension contributions." (*Id.* ¶ 21.) On February 5, 2014, plaintiff alleges that the District and/or Cunningham, through Haessly, filed a "Pension Abuse Report" with CalSTRS, which caused his pension to be automatically terminated. (*Id.* at ¶ 47.)

On January 13, 2016, plaintiff, through counsel, made a formal request to NPAT for the return of his pension funds. (*Id.*) On February 12, 2016, the District issued plaintiff a check for $23,270.11 of the contested funds. (*Id.* ¶ 22.) On August 10, 2016, the same date the criminal charges against him were dismissed, plaintiff submitted a Government Code claim to the District for claims related to the taking of the CalSTRS funds. (*Id.* ¶ 58.) On November 17, 2016, plaintiff received a check for $55,506.16 from NPAT. (*Id.* ¶ 59.) Plaintiff alleges the District still has $96,092.14 of his retirement funds. (*Id.*) This action was filed on December 16, 2016, in the Superior Court of the State of California in the County of Marin.

## II.    LEGAL FRAMEWORK

### A.    Legal Standard

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Section 1983 Claims

In *Monell v. Dep't of Social Servs.*, the Supreme Court held that local governments are "persons" under section 1983 subject to liability for damages where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." 436 U.S. 658, 691 (1978). *Monell* rejects government liability based on the doctrine of *respondeat superior.* Thus, a municipality may not be held vicariously liable for the unconstitutional acts of its employees on the basis of an employer-employee relationship with the tortfeasor. *Id.* at 691–92. Instead, under *Monell*, government liability only attaches when the constitutional injury results from the implementation or "execution of a government's policy or custom, whether made by its lawmakers *or by those whose edicts or acts may fairly be said to represent official policy.*" *Id*. at 694 (emphasis supplied); *see also Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) ("A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" (citation omitted)) .

Plaintiff has not alleged in this case that any District employee was acting pursuant to an express official policy or a longstanding practice or custom. Rather, plaintiff argues that District

4

liability is based on Superintendent Cunningham's role as a "final policymaker." Two routes are available to establish municipal liability under this theory. *Zografos v. City & Cty. of San Francisco*, No. C 05-3881 PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006) (citation omitted). First, "a plaintiff may show that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of the decision." *Id.* (internal quotation marks and citation omitted). Second, "the plaintiff may show that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id*. (internal quotation marks and citation omitted). Under either, the policymaker must "make a deliberate choice from among various alternatives to follow a particular course of action." *Id*. (citation omitted). "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of superiors." *Id*. (citation omitted).

**III.    DISCUSSION**

   **A.    Final Policymaker**

   To determine whether an official is a final policymaker, the court must first "identify the particular area or issue for which the official is alleged to be the final policymaker." *Id.* (quoting *Cortez v. County of Los Angeles,* 294 F.3d 1186, 1189 (9th Cir. 2002)); *see Lytle,* 382 F.3d at 983 (court's inquiry regarding final policymaking authority focused on "employment-related disciplinary decisions for District employees"). When determining whether an individual has final policymaking authority, courts look to "whether he or she *has authority* 'in a particular area, or on a particular issue.'" *Lyle v. Carl*, 382 F.3d 978 at 983 (9th Cir. 2004) (quoting *McMillian v. Monroe County,* 520 U.S. 781, 785 (1997).  The court must then analyze state law to determine the character of an official's function. *Zografos,* 2006 WL 369952, at *16 (whether an official is a final policymaker is a matter of law to be determined by the judge rather than the jury with reference to state law).

   Thus, this Court must determine whether, under state law, Cunningham had final policymaking authority with respect to the "particular area[s] or issue[s]" from which Tucker's

allegations arise, namely terminating a District employee and filing a criminal complaint and Pension Abuse Report against such employee. *See Lyle*, 382 F.3d at 983. For this proposition, plaintiff cites Novato Unified School District Board Policy 2210, which provides, in relevant part:

> Through the adoption of written policies, the Board of Education [the "Board"] conveys its expectations for actions that will be taken in the district, clarifies roles and responsibilities of the Board and Superintendent, and communicates Board philosophy and direction. However, the Board recognizes that, at times, issues may arise in the operation of district schools that are not addressed in Board policy or administrative regulation. When resolution of such issues necessitates immediate action, the Superintendent or designee shall have the authority to act on behalf of the district.

(FAC ¶ 30.) Plaintiff also cites Board Policy 2000, which indicates that the "Superintendent is the chief executive officer and educational leader of the district . . . ." (*Id*. ¶ 29.) Defendants counter that these Board Policies do not help plaintiff for two reasons, namely (i) each of plaintiff's operative causes of action relate to actions taken by Cunningham after Tucker was terminated, and (ii) the Policies describe a Superintendent's authority as limited to implementing and supporting Board decisions.

Defendants' augment that Tucker's claims relate to actions taken by Cunningham after Tucker was terminated fails for at least three reasons according to the allegations in the FAC: first, plaintiff had a continuing relationship with the District based on his pension funds which were allegedly withheld due to the Pension Abuse Report filed at the direction of Cunningham. Second, the criminal complaint and Pension Abuse Report each accuse Tucker of engaging in unlawful conduct while employed at NPTA. Specifically, the criminal complaint accused plaintiff of improperly receiving $15,222.28 in expense reimbursements while he was NPTA's Executive Director. (FAC ¶ 14.) This resulted in formal charges against Tucker for "grand theft and embezzlement *of an employee*." (*Id*. ¶ 17) (emphasis supplied.) Similarly, the Pension Abuse Report accused Tucker of improperly suspending NPTA operations, engaging in careless spending, and claiming suspicious expenditures. (*Id.* ¶ 47.) Finally, a close reading of the FAC shows that plaintiff's retaliation claim (Count 9) arises in part from Cunningham's alleged involvement in plaintiff's termination, which necessarily occurred while Tucker was still

employed at NPAT. (FAC ¶ 222 ("Plaintiff was deprived of his rights under the First Amendment to the Constitution when he was terminated in his position . . . adverse actions included termination of employment . . .") Terminating an NPTA employee is an "employment-related disciplinary decision" which plausibly involves District operations, thus providing an additional ground to deny the motion to dismiss Tucker's retaliation claim based on final policymaking authority. *See Lyle*, 382 F.3d at 983.

Defendant's second argument, which is that Board Policies 2000 and 2210 do not indicate that Cunningham had broad policymaking authority, does not persuade in light of the contrary language contained in these same Board Policies. For example, Policy 2000 identifies the superintendent as the District's "chief executive officer." Further, Policy 2210 delegates to the superintendent authority to act on behalf of the District regarding operational issues which necessitate immediate action. This is sufficient to raise a plausible inference that Cunningham was a final policymaker over the actions alleged in the FAC.

The Court thus finds that the allegations in the FAC are sufficient to state a section 1983 claim based on final policymaking authority over the "particular area[s], or on [the] particular issue[s]" from which Tucker's claims arise. *Zografos*, 2006 WL 3699552, at *16. Tucker's allegations support a plausible inference that Cunningham's actions in terminating plaintiff and directing a criminal complaint and Pension Abuse Report to be filed against him involved "operation[s] of district schools" on which Cunningham had "authority to act on behalf of the district" as the District's chief executive officer. (*See* RFJN, Exhs. A-B.) Therefore, the Court **DENIES** the motion to dismiss the section 1983 claims for unreasonable seizure of person (Count 2) and property (Count 5), retaliation (Count 9) and malicious prosecution (Count 12) based on final policymaking authority.

### B. Ratification

To establish municipal liability under a ratification theory, "the plaintiff may show that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Zografos*, 2006 WL 3699552, at *16. "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it."

*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). A policymaker must make a deliberate choice to endorse a subordinate's decision. *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992). "[S]imply going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy." *Praprotnik,* 485 U.S at 128-130; *Gillette,* 979 F.2d at 1348. "[M]ere refusal to overrule a subordinate's completed act does not constitute approval. To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983." *Christie*, 176 F.3d at 1239-1240. (Internal quotations omitted.)

Plaintiff offers two ratification theories, namely that (i) Cunningham, as final policymaker, ratified Haessley's decision to fabricate allegations of embezzlement and pension fraud against Tucker, and (ii) the Board knew of and approved the conduct alleged in the FAC before the alleged violations were completed.

### 1. Cunningham's ratification of Haessly's alleged conduct

The first theory is based on Cunningham's alleged ratification of Haessley's conduct. Plaintiff avers that Haessly was an agent and employee of the District who received her salary, and federal W-2 tax forms from the District. (FAC ¶¶ 9, 27.) With regard to the criminal complaint, plaintiff alleges that Cunningham ratified Haessley's actions by directing and conspiring with Haessly to "advocate[] for the fabrication of criminal charges to be filed against T[ucker]." (*Id.* ¶¶ 14, 25.) Specifically, plaintiff claims that Cunningham suggested accusing Tucker of fraud. (*Id.*) With regard to the Pension Abuse Report, Tucker alleges that the District and/or Cunningham, through Haessly, filed a "Pension Abuse Report" with CalSTRS, which caused Tucker's pension to be automatically terminated. (*Id.* ¶ 47.) These allegations are sufficient to raise a plausible inference that Cunningham, as the District's chief executive officer in charge of District operations, had supervisory authority over and ratified Haessly's conduct with regard to the criminal complaint and Pension Abuse Report. The Court therefore **DENIES** defendant's motion as to plaintiff's unreasonable seizure of person (Count 3) and property (Count 6), retaliation (Count 10), and malicious prosecution (Count 13) claims against the District based Cunningham's ratification of Haessly's alleged conduct.

2.    The Board's ratification of Cunningham's alleged conduct

By contrast, plaintiff fails to allege sufficient facts to create a plausible inference that the District Board ratified Cunningham's decision to file a criminal complaint against Tucker. Plaintiff alleges that he sent "multiple emails" to the Board in November, 2013, "complaining that he had been defamed." (*Id*. ¶ 39.) However, the FAC does not describe the emails in which plaintiff communicated Cunningham's conduct to the District Board. The FAC focuses on three reports conveyed to the District Board, none of which give rise to an inference that the Board knew of, much less ratified, Cunningham's conduct. The first relates to a financial conflict of interest involving a Board member, the second an unrelated sexual harassment complaint, and the third concerned vandalism of public assets and property at the television studio. (*Id*. ¶ 39.) Plaintiff later references "complaints filed with the California Labor Commissioner, letters from Plaintiff's counsel, and Government Code claims" to support his position that the Board knew "his rights were being deprived" as a result of Cunningham's conduct. (*Id*. at ¶ 56.) However, plaintiff fails to explain how these letters and complaints notified the Board of Cunningham's conduct before the alleged violations were completed.

Plaintiff's allegations regarding the Board's ratification of the plan to target plaintiff's pension fund are similarly insufficient. (*Id*. ¶ 20.) Plaintiff avers that the Board's ratification of the plan to withhold monies from plaintiff's pension fund is documented in January 14, 2014, NPTA Board meeting minutes which suggest that an attack on plaintiff's pension fund could be used "as a catalyst to get R[ick].T[ucker]. to back off his litigation." (*Id*.) This allegation could support an inference that the NPTA Board knew of the plan to accuse plaintiff of fraud, but does not give rise to a sufficient inference that the *Board of Education* had any such knowledge.

The Court therefore **GRANTS WITHOUT PREJUDICE** defendant's motion as to plaintiff's unreasonable seizure of person (Count 3) and property (Count 6), retaliation (Count 10), and malicious prosecution (Count 13) claims against the District based on the Board's ratification of Cunningham's alleged conduct. Plaintiff may amend the FAC if discovery shows that the Board ratified Cunningham's alleged conduct.

### C. Litigation Privilege

The District moves to dismiss plaintiff's claims for unreasonable seizure of person and retaliation (Counts 2-3 and 9-10, respectively) on the basis that California's litigation privilege covers all communications to the police, even those alleged to be false and malicious. *See* Cal. Civ. Code § 47(b); *Hagberg v. California Fed. Bank FSB*, 32 Cal. 4th 350, 372 (2004.) Statements made to the police fall within the absolute privilege established by section 47(b). *Id*. at 364. "[T]he absolute privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing." *Id*. at 360-61 (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)). "[T]he effective administration of justice . . . would be threatened by permitting tort liability for [such] communications . . . courts have applied the privilege to eliminate the threat of liability, which of course already providers certain immunities for state officials . . . ." *Id.* at 361 (internal citations omitted).

Defendants' argument fails in light of the Supreme Court's ruling in *Martinez* that state law immunity is not a valid defense to a Section 1983 claim. *Martinez v. California*, 444 U.S. 277, 284 (1980); *see also Felder v. Casey*, 487 U.S. 131, 139 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted . . . because the application of the state law would thwart the congressional remedy . . .") In *Kimes*, the Ninth Circuit interpreted *Martinez* and *Felder* in holding that Section 47(b) did not bar plaintiff's Section 1983 claims for deprivation of property rights and causing unwarranted imposition of state and federal taxes because "state immunity law does not govern § 1983 claims." *Kimes v. Stone,* 84 F.3d 1121, 1127 (9th Cir.1996); *see also Pardi v. Kaiser Foundation Hospitals* (9th Cir. 2004) 389 F.3d 840, 851; *Oei v. N. Star Capital Acquisitions* 486 F. Supp. 2d 1089, 1098) (C.D. Cal. 2006); *Winters v. Jordan*, 2011 U.S.Dist. LEXIS 25944, at \*20 (E.D.Cal. 2011).

Defendants fail to address any of the Supreme Court and Ninth Circuit case law holding that Section 47(b) does not bar Section 1983 claims, which suggests that defendants concede this argument fails. The motion fails on this ground.

### D. Statute of Limitations

The District moves to dismiss plaintiff's claims for retaliation (Counts 9 and 10), arguing that the statute of limitations has expired. The parties agree that the statute of limitations on section 1983 actions in California is two years. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001) ("Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions.") (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)); Cal. Civ. Proc. Code § 335.1 (California's statute of limitations for injury caused by the wrongful conduct of another is two years).

Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Knox*, 260 F.3d at 1013. "A retaliatory act is considered a discrete act that occurs at a particular time, and the fact that some 'acts . . . fall within the statutory time period' does 'not make timely acts that fall outside the time period.'" *Eng v. Cty. of Los Angeles*, 737 F. Supp. 2d 1078, 1098 (C.D. Cal. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 112 (2002)).

This action was filed on December 16, 2016, in the Superior Court of the State of California in the County of Marin. Plaintiff argues that his claim for retaliation accrued when he was arrested on February 12, 2015, within the two-year statute of limitations because he was unaware of defendants' intent to file a criminal charge against him until the date of his actual arrest. (FAC ¶ 17.) The District argues that the claim accrued earlier, in either December 2013 or January 2014, when plaintiff "attempted to intervene in Cunningham and Haessley's actions by requesting that the District produce 'annual equipment inventory reports'" on an unspecified date. (Reply at 6.) Thus, the District contends that plaintiff's action accrued outside the two-year statute of limitations and is time-barred.[3]

//

---

[3] Defendants further ague that Tucker became aware that Cunningham had accused him of possessing a gun on District property when police interviewed him about this accusation in 2013. (*See* FAC ¶ 35.) This argument fails because plaintiff's retaliation claims are not related to Cunningham's report accusing Tucker of bringing a firearm to school property.

Defendants do not persuade. Plaintiff is not required to allege the exact date on which he "attempted to intervene" in the alleged conspiracy at this juncture. Further, defendants have made no showing that Tucker's attempt to intervene in Cunningham's actions occurred more than two years before this action was filed.

The Court thus finds plaintiff's allegations sufficient to raise a plausible inference that the retaliation claims are not time-barred and **DENIES** defendants' motion to dismiss Counts 9 and 10 on statute of limitations grounds.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** defendants' motion to dismiss as to Counts 2, 5, 9 and 12; **DENIES IN PART** the motion as to Counts 3, 6, 10 and 13 based on Cunningham's ratification of Haessley's alleged conduct; and **GRANTS WITHOUT PREJUDICE** the motion as to Counts 3, 6, 10 and 13 based on the Board's ratification of Cunningham's alleged conduct. Defendant shall answer the FAC in 21 days.

The Case Management Conference in this matter is **CONTINUED** from August 21, 2017, to **Monday, September 11** at **2:00 p.m.** in the Ronald V. Dellums Federal Building, located at 1301 Clay Street, Oakland, California, Courtroom 1.

This order terminates Docket No. 20.

**IT IS SO ORDERED.**

Dated:  August 8, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**